Jaffrey v. Mathews.

JAFFREY *et al.*, *Appellants*, v. MATHEWS *et al.*

Division One, February 19, 1894.

120 317
123 325
58a 585
120 317
64a 135

120 317
133 497
120 317
68a 295

120 317
165 142
91a 605

1. **Mortgage**: PREFERENCE: INSOLVENT DEBTOR. An insolvent debtor can mortgage or pledge all or any part of his property for the benefit of one or more of his creditors.

2. ———: ———: ———: ASSIGNMENT. Such privilege is not abridged by Revised Statutes, 1889, section 198, relating to voluntary assignments for benefit of creditors.

3. ———: ———: ———. The fact that a chattel deed of trust given to secure notes payable to part only of the grantor's creditors empowers the trustee to take possession of the property and sell it at private sale and hold the proceeds until the maturity of all notes secured, does not change its character as a security and make it a general assignment.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*Henry Wollman* for appellants.

(1) The instrument before the court, when read between its four corners, is a voluntary assignment. If there were any doubt, caused by the fact that defendants have attempted by inserting a sham "defeasance" clause, to create an ambiguity as to its meaning, then when it is read in the light of surrounding circumstances, it is an assignment. Whenever courts are in doubt as to whether an instrument is an assignment or not, that doubt should be resolved in favor of holding it an assignment and bringing it within the operation of the statute governing assignments, because that is remedial legislation of the highest and most beneficent character. *Kiser v. Daunenberg*, 88 Ga. 541; *Harkrader v.*

*Leiby*, 4 Ohio St. 602; *Winner v. Hoyt*, 66 Wis. 234; *Preston v. Spaulding*, 120 Ill. 208; *White v. Cotzhauzen*, 126 U. S. 329; *Lucas v. Railroad*, 32 Pa. St. 458;. *Sexton v. Anderson*, 95 Mo. 373; *Larabee v. Bank*, 114 Mo. 592. (2) The word "voluntarily" as used in the statute means nothing except that it is a conveyance voluntarily made by the party himself and not by a court, as an assignment in bankruptcy is. *Manny v. Logan*, 27 Mo. 528. (3) Where a conveyance is to a third person and aims and designs to create a fund immediately and without any conditions out of which the defendant shall be paid eventually, it constitutes an assignment. *State v. Benoist*, 37 Mo. 500; *Crow v. Beardsley*, 68 Mo. 435. (4) This instrument contains what is called a "defeasance" clause, which simply provides that in case the debts are paid the conveyance should become void. Every assignment is subject to such a condition whether the parties write it in or not, and putting it there adds nothing to and takes nothing from the instrument. It does not change its character at all, the other provisions showing that the parties intended to make what in legal effect is an assignment. *Penzel Co. v. Jett*, 54 Ark. 428.

*John R. Walker* and *Peak & Ball* for respondents.

(1) After executing the deeds of trust, Mathews could not affect the instruments or change their nature by his statements and declarations. *Gates v. Labeaume*, 19 Mo. 17; *Sutter v. Lackmann*, 39 Mo. 91; *Weinrich v. Porter*, 47 Mo. 293; *Bank v. Russell*, 50 Mo. 531; *Steward ex rel. v. Thomas*, 35 Mo. 202; *Albert v. Besel*, 88 Mo. 150; *Douglass v. Cissna*, 17 Mo. App. 44; *Meredith v. Wilkinson*, 31 Mo. App. 1; *Farrar v. Snyder*, 31 Mo. App. 93; *Zeliff v. Schuster*, 31 Mo. App. 493. (2) "The assignment law of this state is not in letter

or spirit, a bankrupt or insolvent debtor's act. A debtor, whether solvent or insolvent, may, in good faith, sell, deliver in payment, mortgage or pledge the whole or any part of his property for the benefit of one or more of his creditors, to the exclusion of others." *Hargadine v. Henderson*, 97 Mo. 375; *Murray v. Cason*, 15 Mo. 378; *Ames v. Gilmore*, 59 Mo. 537; *Shelly v. Boothe*, 73 Mo. 74; *Dougherty v. Cooper*, 77 Mo. 528; *Foster v. Mill Co.*, 92 Mo. 79; *Larrabee v. Franklin Bank*, 114 Mo. 592; *Singer v. Goldenburg*, 17 Mo. App. 549; *Gummersell v. Hanbloom*, 19 Mo. App. 274; *Shapleigh v. Baird*, 26 Mo. 322; *Sampson v. Shaw*, 19 Mo. App. 274. (3) The instrument in controversy is a deed of trust, and not an assignment. It possesses all the features which distinguish a deed of trust from an assignment. Very few of the debts secured were due at the time, and on the day it was agreed to execute it, May 26, 1890, a note was made to the First National Bank of Kansas City in the sum of $6,176.53, 'for borrowed money due in ninety days and the bank surrendered a deed of trust then held by it on the real estate; and the past due notes held by Hawkins were surrendered and a new note payable in sixty days was given him for $8,135. This money advanced, surrender of deed of trust, and extension given was the consideration for the deeds of trust. It contains a clause of defeasance which clearly and definitely characterizes it a deed of trust and not an assignment. *Crow v. Beardsley*, 68 Mo. 435; *Hargadine v. Henderson*, 97 Mo. 375; *Larrabee v. Franklin Bank*, 114 Mo. 592; *Sampson v. Shan*, 19 Mo. App. 274; *Mills v. Williams*, 31 Mo. App. 447; *Smith v. Thurman*, 29 Mo. App. 186; *Assignment of Zwang*, 39 Mo. App. 356; *Bank v. Bank*, 136 U. S. 223; *May v. Tenny*, 148 U. S. 60. (4) The fact that immediate possession was delivered to the trustee, does not change the nature of the instru-

ment from a deed of trust to that of an assignment. *Crow v. Beardsley*, 68 Mo. 435; *State ex rel. v. Cooper*, 79 Mo. 464; *Hargadine v. Henderson*, 97 Mo. 375; *Smith v. Thurman*, 29 Mo. App. 186; *Assignment of Zwang*, 39 Mo. App. 356; *Bank v. Bank*, 136 U. S. 223; *May v. Tenny*, 148 U. S. 60.

BRACE, J.—On the twenty-seventh of May, 1890, William T. Mathews, a merchant of Kansas City, executed and delivered to the defendant, Robert L. Yeager, a deed of trust conveying to the said Yeager, as trustee, all his interest in certain real estate in said city, to secure the payment of certain debts due the other defendants herein. On the same day he executed and delivered to said Yeager the following instrument of writing:

"This conveyance made and entered into this twenty-seventh day of May, 1890, by and between William T. Mathews, of Kansas City, Jackson county, Missouri, party of the first part, and R. L. Yeager, of Kansas City, Missouri, party of the second part, and the First National Bank of Kansas City, Missouri, H. B. Claflin & Co., and Dunham, Buckley & Co., of the city of New York, state of New York, and Continental National Bank of the city of St. Louis, Missouri, and Charles M. Hawkins, of the county of Jackson and state of Missouri, parties of the third part, witnesseth: That the said party of the first part, in consideration of the debts and trust hereinafter mentioned, and of the sum of one ($1) dollar, to him in hand paid, the receipt of which is hereby acknowledged, does by these presents bargain, sell, transfer and set over unto the said party of the second part, his successors and assigns in trust, the following described property, to wit: All the stock of goods of every kind and description, consisting of dry goods, cloaks, wraps,

hosiery, underwear and notions, the property of the said party of the first part, and situate in the brick store building, four stories high with basement, known as numbers 1109 and 1111 Main street, in Kansas City, Missouri, and now occupied by the party of the first part as a general dry goods store, together with all the show cases, shelving, counters, safes, and all fixtures of every kind in said store contained; also one gray horse and one bay horse used in the delivery wagons, and also two delivery wagons and two sets of harness; also all book accounts and evidences of debt for goods sold out of said store, and also the lease now held by the said party of the first part on said building, to have and to hold the same unto said party of the second part and his successors forever, in trust, however, for the following purposes, to wit:

"Whereas, said party of the first part is indebted to the said First National Bank of Kansas City, Missouri, in the sum of thirty-nine thousand, one hundred and seventy-six dollars and fifty three cents, as evidenced by seven promissory notes as follows: One note for three thousand dollars, dated April 11, 1890, due ninety days after date; one note for four thousand dollars, dated May 7, 1890, due ninety days after date; one note for sixty-five hundred dollars, dated April 15, 1890, due ninety days after date; one note for forty-five hundred dollars, dated April 23, 1890, due ninety days after date; one note for ten thousand dollars, dated May 19, 1890, due ninety days after date; one note for five thousand dollars, dated March 24, 1890, due ninety days after date; and one note for six thousand, one hundred and seventy-six dollars and fifty-three cents, dated May 26, 1890, all of said notes being payable to the order of said First National Bank of Kansas City, Missouri, with interest from maturity at the rate of ten per cent. per annum, and all being

signed 'William T. Mathews,' John Mathews. And whereas said party of the first part is indebted to said H. B. Claflin & Co. in the sum of sixteen thousand, three hundred and sixteen dollars and ninety-two cents, which said indebtedness is evidenced by six promissory notes described as follows:   One note for thirty-six hundred and ninety-four dollars and fifty-one cents, dated April 9, 1890, due ninety days after date; one note for twenty-five hundred and fifty-one dollars and sixty-one cents, dated April 9, 1890, due ninety days after date; one note for thirty-seven hundred and seventy-five dollars and eighty-five cents, dated April 9, 1890, due four months after date; one note for twenty hundred and thirty-nine dollars and twelve cents, dated April 15, 1890, due four months after date; one note for twenty-five hundred and thirty-one dollars and six cents, dated April, 1890, due six months after date, all signed by William T. Mathews, John Mathews; also one note for seventeen hundred and twenty-four dollars and seventy-seven cents, dated May 16, 1890, due four months after date, signed, William T. Mathews. And, whereas said party of the first part is indebted to said Dunham, Buckley & Co. in the sum of fifteen thousand, seven hundred and eighty-eight dollars and fifty nine cents, which said indebtedness is evidenced by nine promissory notes described as follows:   One note for sixteen hundred and ninety-two dollars and eighty-nine cents, dated March 31, 1890, due in sixty days after date; one note for sixteen hundred and ninety-two dollars and eighty-nine cents, dated April 20, 1890, due in ninety days; one note for seventeen hundred and one dollars and twenty-six cents, dated April 21, 1890, due in ninety days after date; one note for seventeen hundred and one dollars and twenty-six cents, dated April 30, 1890, due ninety days after date; one note for eighteen hundred and

two dollars and ninety-five cents, dated May 11, 1890, due in five months, and one note for seventeen hundred and ninety-five dollars and seventy-two cents, dated May 1, 1890, due in four months; one note for eighteen hundred and two dollars and ninety-five cents, dated May 1, 1890, due in six months; one for eighteen hundred and two dollars and ninety-five cents, dated May 1, 1890, due in six months; one for eighteen hundred and two dollars and ninety-six cents, dated May 11, 1890, due in five months, all signed William T. Mathews, and payable to the order of Dunham, Buckley & Company. And, whereas the said party of the first part is indebted to the said Continental National Bank of St. Louis Missouri, in the sum of nine thousand dollars, which said indebtedness is evidenced by two promissory notes described as follows: one for five thousand dollars, one for four thousand dollars, both dated May 21, 1890, and due ninety days after date, with interest from maturity at the rate of ten per cent. annum and signed John Mathews, Wm. T. Mathews. And, whereas the said party of the first part is indebted to the said Charles M. Hawkins in the sum of eight thousand, one hundred and thirty-five dollars, which said indebtedness is evidenced by a promissory note, dated Kansas City, Missouri, May 26, 1890, for eight thousand, one hundred and thirty-five dollars, payable sixty days after date to said Charles M. Hawkins or order, with interest from date at the rate of ten per cent. per annum, signed William T. Mathews.

"Now, therefore, if the said party of the first part, his executors or administrators shall well and truly pay off and discharge said notes and the interest thereon when the same become due and payable according to the true tenor, date and effect thereof, then this conveyance shall become void, otherwise to remain in full force.

"The said party of the second part shall take immediate possession of all property and effects hereby sold and possession of the same is hereby delivered to said trustee and as such trustee he shall proceed to take an inventory of said property and shall proceed to sell the same at private sale, in such manner as he may deem best at the best prices that can be obtained therefor, and whenever he shall deem it of advantage to all of the parties hereto he may sell said property and effects at public sale. The said party of the second part as such trustee shall hold the proceeds of all sales until the maturity of all of said notes secured hereby and when all of said notes shall become due and payable the said trustee shall apply the proceeds of said sales to the payment of said notes, *pro rata*, after paying all the necessary costs, charges and expenses of executing this trust and the surplus, if any, shall be paid to the party of the first part or his legal representatives.

                    "WM. T. MATHEWS.    [SEAL]"

These two conveyances were duly acknowledged, and on the day of their execution, and at the same time were filed for record in the office of the recorder of deeds of Jackson county at Kansas City. Thereupon the said Yeager entered into possession of the personal property described in the second conveyance, and was proceeding to execute the trust thereby reposed in him, when on the fourth day of June, 1890, this action was commenced by petition in the nature of a bill in equity, by the plaintiffs (who are creditors of the said Mathews and not secured by said conveyances, or either of them), to declare said second conveyance to be a voluntary assignment under the laws of Missouri, for the equal benefit of all the creditors of said Mathews, and for the administration of the estate under the law governing in such cases.

Jaffrey v. Mathews.

There is no dispute about the material facts in the case. The defendants, except Yeager, are the beneficiaries in both conveyances. The two conveyances cover substantially all the property which belonged to Mathews or in which he had an interest at the time of their execution. The deed of trust on the real estate was of no value as a security, the land being incumbered by prior liens to the full extent of its value. The action is directed solely at the conveyance of the personalty. It is conceded that the debts set out in the conveyance, the payment of which was thereby attempted to be secured, were *bona fide* debts due and owing to the defendant creditors respectively, as therein set out; that the property conveyed was not an excessive security for such debts; that at the time of the execution of the conveyance Mathews had exhausted his credit, was insolvent, unable to continue his business, and with no reasonable prospect of being able to resume it within any reasonable time in the future, or of being able to pay the debts secured at or before maturity except by means of this trust. It is also perfectly clear from the evidence that Mathews intended by this conveyance to secure the payment of the defendant creditors out of his available assets, in preference to his other creditors; that he did not intend to assign the property to Yeager for the benefit of all his creditors, and that he did not intend that the estate conveyed to said trustee should be administered under the assignment law of the state for the benefit of all his creditors.

It is not contended that the instrument is not in form apt and sufficient as a chattel deed of trust to effectuate Mathews' intentions in regard to this property, or that by reason of any reservation or condition therein contained it is fraudulent and void as to his creditors or any of them. But it is contended, that in

view of the facts that the debts for which the notes and deed of trust were given were past due; that the grantor was hopelessly insolvent; that the property conveyed was his whole estate; that by the operation of the terms of the deed the trustee was placed in immediate possession of the property, with power to dispose of it by raising a fund to be applied *pro rata* upon said notes when they became due, and that Mathews had no hope, intention or expectation of exercising the right of redemption therein secured to him by the terms of the instrument,—the said instrument was in effect, a practical, present appropriation of all his estate to the payment, in whole or in part, of the debts therein set out; and by reason thereof, though not in form a statutory deed of assignment, and though not intended to be such by the maker thereof, must under the law of this state be held to be an assignment for the benefit of all of his creditors. That law is as follows:

"Section 424. Voluntary assignment—execution of.—Every voluntary assignment of lands, tenements, goods, chattels, effects and credits made by a debtor to any person in trust for his creditors, shall be for the benefit of all the creditors of the assignor in proportion to their respective claims; and every provision in any assignment providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities (including judgments entered by confession thirty days previous to such assignment) shall be paid *pro rata* from the assets thereof. * * *" R. S. 1889, p. 198.

As early as 1841 the legislature provided a method by which a debtor who so desired might appropriate his property to the payment of his debts under the supervision of the courts. The mode of proceeding provided was intended to secure a safe, prompt and

honest administration of the estate of the debtor and its distribution among his creditors according to his wishes.   Sess. Acts, 1841, p. 15; R. S. 1845, ch. 10, p. 127.   Under this act a debtor could make an assignment of the whole or a part of his property for the benefit of all or a part of his creditors, and could give preferences between those named.   The only material change made in this statute by subsequent legislation, except in matters purely administrative, has been to abolish the right of the debtor in a statutory deed of assignment to exclude any of his creditors, or to give preferences between them, and to include within its operation judgments entered by confession thirty days previous to its execution.   R. S. 1855, ch. 8, sec. 39; G. S., 1865, ch. 112, sec. 1; R. S. 1879, ch. 5; Sess. Acts, 1885, p. 30.

There is nothing in the terms of the law itself; there is nothing in the history of the legislation on this subject; there is nothing in the adjudications of this court that gives countenance to the idea that a debtor, insolvent or otherwise, who is desirous of appropriating his property to the payment of his debts is compelled to resort to the statutory proceeding to accomplish his purpose.   It operates only upon a voluntary assignment in trust for creditors, when made, and it operates all the same whether the debtor be solvent or insolvent —whether he conveys all or only a part of his property. It simply affords a debtor who is desirous of appropriating his property to the payment of his debts a safe method of proceeding under the supervision of the courts, whereby his purpose may be accomplished upon the one restrictive condition, that if he resorts to it all his creditors must be paid *pro rata* out of the assets assigned, whether nominated in the conveyance or not. The statute does not, and was not intended, to any further extent, to abolish or abridge his common law

right, "whether solvent or insolvent, in good faith to sell, deliver in payment, mortgage or pledge the whole or any part of his property for the benefit of one or more of his creditors." This construction of the statute has been uniformly recognized and maintained by the courts of this state from the beginning. *Shapleigh v. Baird*, 26 Mo. 322; *Johnson v. McAllister's Assignee*, 30 Mo. 327; *State to use v. Benoist*, 37 Mo. 500; *Crow v. Beardsley*, 68 Mo. 435; *Hargadine v. Henderson*, 97 Mo. 375; *Larrabee v. Franklin Bank*, 114 Mo. 592; *Sampson v. Shaw*, 19 Mo. App. 274; *In re Assignment of Zwang*, 39 Mo. App. 356.

Whatever doubt may have existed in this state at one time as to the correctness of this construction seems to have been originated by an opinion of Judge KREKEL in *Martin v. Hausman*, 14 Fed. Rep. 160, who undertook to lay down the law to be that while "a debtor in Missouri, under its legislation and adjudications thereon, may, though he be insolvent at the time, prefer one or more of his creditors by securing them, but he can not do it by an instrument conveying the whole of his property to pay one or more creditors. •Instruments of the latter class will be construed as falling within the assignment laws, and as for the benefit of all creditors, whether named in the instrument or not."

This ruling, followed for awhile by the federal courts in this state and extended "so as to hold a deed of trust in the nature of a mortgage of all the personal property of the debtor to be a voluntary assignment within the meaning and effect of the Missouri statute," finally came before the supreme court of the United States in *Union Bank v. Kansas City Bank*, 136 U. S. 223 in 1890, and was expressly repudiated *nem. con.* after an elaborate review of the legislation upon the subject and the adjudications of the state courts thereupon, and the doctrine as hereinbefore stated, and

maintained in *Crow v. Beardsley*, and *Hargadine v. Henderson*, *supra*, recognized as the settled law of this state.

Such being the law, then, Mathews, when he executed this instrument, though hopelessly insolvent —though the stock of goods, etc., therein transferred was all the property he possessed in this world—had the right, in good faith, either to make an absolute, unqualified assignment of that property to a trustee for the benefit of his creditors, or by an instrument in writing in the nature of a chattel mortgage or deed of trust, retaining an equity of redemption, to pledge that property as security for the payment of his debts; the object to be accomplished in both instances being the same, the payment of his debts. His right to choose either the one or the other method for accomplishing that purpose was just as free, absolute and complete in the one case as in the other. If he chose the former, the assignment law prevented his appropriating his assets to the payment of some of his creditors to the exclusion of others, or making any discrimination between them. If he chose the latter he could appropriate his property to the payment of any one or more of his creditors and exclude the others. Whether he did the one or the other depended on the form of the instrument which he selected for that purpose. He deliberately and intentionally chose the latter, executed a chattel deed of trust, reserving a right of redemption in the property until the maturity of the notes.

And that he did so is the whole burden of plaintiff's complaint here. Their complaint is not that the instrument in form is not a chattel mortgage security, but that the defeasance clause therein, which gives it that character, was put in there for the express purpose of excluding it from the operation of the general assignment law of the state. Certainly it was. In doing so,

as we have seen, he was but exercising a right secured to him by the laws of the land. A right which the legislature of this state has not seen fit so far to withhold from any of its citizens, solvent or insolvent, and which the courts can not impair or abridge by construction or otherwise, whatever may be the law and rulings in other jurisdictions.

The fact that by the terms of the instrument the trustee was empowered to take possession of the property and sell at private sale, and hold the proceeds of such sales until the maturity of all the notes secured, in no way changed its character as a chattel mortgage security. *Hargadine v. Henderson; In re Assignment of Zwang, supra.*

On the hearing, the circuit court dismissed the bill, and its judgment is affirmed. All concur, except BARCLAY, J., absent.