ALBERGER v. NATIONAL BANK OF COMMERCE OF KANSAS
CITY, *Appellant.*

Division One, June 19, 1894.

123   313,
128   345
128   489

123   313
130   195
131   286

123   313,
133   498

123   313
68a   556

123   313;
139   478

123   313
119   208
d76a   26

123   313
93a   ¹596
93a   ⁴596

1. **Corporation**: INSOLVENCY: PREFERENCE.  A corporation in failing circumstances may, in Missouri, prefer one creditor to another in discharging its obligations, if such preference is made in good faith while the property of the company remains in its possession, unaffected by liens or by process of law.

2. ———: ———: ———: ASSIGNMENT.  Such a preference is not invalidated by the subsequent act of the failing corporation in making a general assignment on the same day for the benefit of its creditors.

3. ———: ———: ———.  Such a preference is not rendered fraudulent because the amount of property transferred is largely in excess of the debt thereby preferred.

4. ———: ———: ASSETS: CREDITORS.  Mere insolvency of a corporation does not of itself transform its assets into a trust fund for the equal benefit of all its creditors.

*Appeal from Jackson Circuit Court.*

REVERSED AND REMANDED.

*Karnes, Holmes & Krauthoff* and *Elijah Robinson* for appellants.

(1) It was declared by this court at an early day that "the law may be considered as settled that a corporation may convey its property in trust to pay its debts, and, like an individual, may prefer one creditor over another." *St. Louis v. Alexander,* 23 Mo. 483, 524; *Foster v. Mill Co.,* 92 Mo. 79; *Hutchinson v. Green,* 91 Mo. 367; *Bank v. Iron. Co.,* 97 Mo. 38; *Coates v. Donnell,* 94 N. Y. 168.  (2) "If there be no legislative prohibition against a transfer of corporate

property, or its use in preferring creditors after insolvency, no reasons can be given why such transaction should be invalid which would not invalidate also the like transfers of individuals. Both reason and authority establish the proposition that a corporation may sell and transfer its property, and it may prefer its creditors, although it is insolvent, unless such conduct is prohibited by statute." *Wilkinson v. Bauerle*, 41 N. J. Eq. 635; *Allis v. Jones*, 45 Fed. Rep. 148. (3) Such is the position of many standard authorites on the subject. Kent Com., *315, note *g*, and, also, *281; Cook on Corp. [2 Ed.], sec. 691; Angell & Ames on Corp. [11 Ed.], sec. 187; 1 Beach on Priv. Corp., sec. 358; 2 Potter on Corp., sec. 695; Burrill on Assignments [5 Ed.], sec. 64. (4) There is no adjudged case in which a preference to a stranger was annulled upon the sole ground urged by these plaintiffs. In one case (*Rouse v. Merchants' Bank*, 46 Ohio St. 493) a preference was set aside, partly upon the trust fund idea and partly upon considerations of public policy evidenced by local constitutional and statutory provisions. In so far as the court proceeded upon the former ground, one of the most accomplished of modern jurists declared that the opinion could not be maintained "on general principles of equity jurisprudence." (Mr. Justice GRAY in *Smith Purifier Co. v. McGroarty*, 136 U. S. 237, 241.) (5) There are two cases in the St. Louis court of appeals, in one of which a preference to a stranger was assumed to stand upon precisely the same grounds as a preference to a director; and, in the other, in *dicta* of the most glaring type, the broad proposition is announced that the insolvency of a corporation *ipso facto* operates as though it had made a general assignment. *Woolen Co. v. Kampe*, 38 Mo. App. 229, 233; *State ex rel. v. Brockman*, 39 Mo. App. 131. (6) Under the statute, the Krull Tailoring Company had

the power "to hold, purchase, mortgage or otherwise convey such real and personal estate as the purposes of the corporation shall require" (R. S., sec. 2508), language broad enough to authorize a preference to be given to creditors. *Gordon v. Preston*, 1 Watts, 385. (7) One of the purposes of the corporation was to pay its debts. To this end the directors had the power to apply its property to secure the payment of such of its creditors as they might select. *In re Patent File Co.*, L. R. 6 Ch. App. 83; *Sargent v. Webster*, 13 Metc. 497. (8) "The property or business of the corporation shall be controlled and managed by (its) directors." R. S., 2772. (9) The statute (sec. 2513) declares "that upon the dissolution of any corporation, the president and directors, or managers, of the affairs of said corporation at the time of its dissolution shall be trustees of said corporation," etc. Upon the well known maxim *"expressio unius,"* etc., this must be held to be a declaration of legislative intent that prior to the dissolution of a corporation or an interference by the courts, the control of its property is to remain with the directors, to whom it is committed by section 2772. The authorities are clear and to the point that the insolvency of a corporation does not work its dissolution, nor make its directors trustees of its assets, although it has ceased active business and is not in a condition to resume. *Adams v. Milling Co.*, 35 Fed. Rep. 433; *Lippincott v. Carriage Co.*, 25 Fed. Rep. 577; *Buell v. Buckingham*, 16 Iowa, 284 (approved in 69. Mo. 224; 2 Potter, Corp., secs. 693, 694, 695, p. 824, note 5; 2 Kent, Com., *312; *Hill v. Fogg*, 41 Mo. 563; *Bank v. Robidoux*, 57 Mo. 446; *Hotel Co. v. Sauer*, 65 Mo. 279; *Ins. Co. v. Floyd*, 74 Mo. 286; *Cattle Co. v. Frank*, 148 U. S. 603; *Sewell v. Beach Co.*, 25 Atl. Rep. 929 (New Jersey, 1893).

*Brown, Chapman & Brown* for respondents.

(1) The evidence shows that when the preference was made to the bank the Krull Tailoring Company was unable longer to continue in business; that it owed some $20,000, over $10,000 of which was due; that it was being pressed for payment and was unable to pay any part of its indebtedness; that it was insolvent and unable longer to continue in business. Insolvency is the state of a person who, from any cause, is unable to pay his debts in the ordinary or usual course of trade. 11 Am. and Eng. Encyclopedia of Law, p. 168. A corporation, like an individual, is insolvent when it is unable to pay its debts. Boone on Corporations, sec. 202; *Brower v. Harbeck*, 9 N. Y. 589; *Hazleton v. Allen*, 3 Allen, 114; *Ring v. Paint & Glass Co.*, 44 Mo. App. 111. (2) It is also shown by the evidence that the turning over of the assets of this corporation to the bank was not for the purpose of furthering the interests of the corporation, but because the corporation could not longer continue in business, and the entire assets were turned over with a view of going out of business and making the bank a preferred creditor. This is conclusively shown, for the corporation having turned over its entire assets to the bank could not have continued in business if it had desired and from the further fact that within an hour after the bank took possession the corporation made a general assigment. The officers and directors of an insolvent corporation, after it has been ascertained and declared by its managing board to be insolvent and unable to longer continue in business can not turn over to one creditor the assets of the corporation, thereby giving such creditor a preference, to the exclusion of other creditors of the corporation. Taylor on Private Corporations, sec. 668; *Dabney v. Bank*, 3 S. C. 124; *Robbins v.*

*Embry*, 1 Sm. & M., Ch. (Miss.) 207; *Haywood v. Lumber Co.*, 64 Wis. 639, *et seq.*; *Bodley v. Goodrich*, 7 How. 276; *Swepson v. Bank*, 9 Lea (Tenn.), 713; *Hightower v. Mustian*, 8 Ga. 506; *Richards v. Insurance Co.*, 43 N. H. 263; Morawetz on Private Corporations, sec. 803; *Marr v. Bank*, 4 Cold. 471; *Rouse v. Bank*, 46 Ohio St. 493; *Lyons Thomas Co. v. Stove Co.*, 86 Tex. 143.

BARCLAY, J.—This is a suit to set aside a preference and for the appointment of a receiver, etc.

It is not necessary to state the pleadings.

The facts are admitted.

In February, 1891, the Krull Tailoring Company of Kansas City became financially embarrassed. Being threatened with attachments, it turned over its merchandise, fixtures and book accounts to the National Bank of Commerce, and delivered immediate possession of the same to the latter to secure a debt of about $3,200, then due to the bank, evidenced by the note of the company.

In January, 1891, the stock of the company had been invoiced at about $22,000; but, owing to a shrinkage of values, the stock could not have been sold for cash in February, 1891, for more than thirty-five per cent. of the invoice figures.

The liabilities of the company, February 17, 1891, were about $20,000.

The note to the bank had been due since January 3, 1891. The cashier of the bank had pressed for payment without avail.

There is no suggestion of any fraud on the part of the bank or its officers in getting the preference. The debt was honest and unquestioned.

After the company had delivered possession of the property to the bank to secure its indebtedness to that

institution, the company, on the same day, February 17, 1891, made a general statutory assignment of all its remaining assets to Mr. Bainbridge for the benefit of its general creditors. But prior to the assignment, nothing was said to any of the bank officers, indicating an intent or purpose of the company to follow the preference with an assignment.

On this case the circuit court found for plaintiffs and entered a decree, setting aside the preference and appointing a receiver to take possession of the property acquired by the bank, as aforesaid, and to administer the property for the benefit of all the creditors of the tailoring company.

The bank appealed, after the necessary preliminaries.

All the counsel concede that the clear question presented by the appeal is whether or not a corporation in failing circumstances may lawfully prefer one creditor to another in discharging its liabilities, there being no fraud shown.

Neither the principal creditor whose rights are involved in the present controversy, nor any one of its officers, was interested in the failing concern, as stockholder, director, or otherwise than as a creditor having a valid and enforceable, overdue demand against the corporation.

1. It was said in Missouri, as long ago as *Murray v. Cason* (1852), 15 Mo. 381, that "it is not necessary to quote books for the purpose of showing that a debtor in failing circumstances may give a preference to one or more of his creditors, to the exclusion of others."

Such a preference, made in good faith, may undoubtedly be given by an individual; but it is claimed that a private corporation has no such right. This claim is planted on the ground that, without any

action of a court, the mere insolvency of a corporation transforms its assets into a different sort of "trust fund" from that which they previously constituted— into a "trust fund" for the benefit of all its creditors, which fund can not lawfully be applied otherwise than equally among them.

This theory seems to have a singular fascination to some learned jurists, but, in our opinion, it is wholly untenable as applied to the facts of such a case as that before us, under the law of Missouri.

No doubt the assets of a business company are properly chargeable with its debts; and its directors are charged with a trust to apply its assets to those debts. But, in the absence of legislation restricting that right, the company, within the proper range of its corporate business, has the same right, while a "going concern," to determine to which of its debts its assets shall be applied, as has an individual, in like circumstances. It is a going concern, in contemplation of law, so long as the property of the company remains in its possession, unaffected by liens or process of law. While that condition exists, it is difficult to see upon what basis of principle a distinction can be established between its right to exercise the powers of ownership in respect of such property and the right of control (within the limitations of good faith) conceded in similar circumstances to an individual.

The right of the latter to give a preference to one creditor over another is usually grounded on the power of disposition incidental to the ownership of property.

That ground exists with equal strength as to a business corporation in this state.

"The property or business of the corporation shall be controlled and managed" by its directors, under our law. R. S. 1889, sec. 2772.

Upon dissolution of the company, the president

and directors or managers become trustees to collect the assets, pay the debts and distribute any surplus to the stockholders, being liable, in so doing, to the extent of the property which comes to their hands. R. S. 1889, sec. 2513.

The courts are invested with statutory power to enforce a proper performance of duty by all officers of corporations, at the instance of creditors as well as of stockholders, and may even take charge of the corporate property and business, through the agency of receivers, if necessary, for that purpose. R. S. 1889, secs. 2790, 2791, 2792.

But there is nothing in the law of this state which can properly be construed to constitute the directors trustees for all general creditors alike, or to limit their power of dealing in good faith with the property by way of preference to one creditor, so long as the company, undissolved, holds the title to the property.

Upon dissolution of the company, or the intervention of a court, that power becomes restricted within the field defined by the statutes already cited. But those limitations apply only to the facts described in the statutes, and not otherwise.

If such an important restriction upon the ownership of property was designed by the law to be imposed on corporations, and upon the power of the company officers to deal with its property in their hands, as is here claimed by the plaintiffs, it is believed that such restriction or limitation would have been expressed by the lawgivers with reasonable clearness.

The statute law itself furnishes reasons for so believing.

In the chapter governing limited partnerships it is declared that no transfer, etc., of the firm's property by way of preference to any creditor shall be valid, if the

firm is insolvent, or in contemplation of insolvency. R. S. 1889, sec. 7204.

In the present law of assignments for the benefit of creditors, preferences are distinctly forbidden, and every assignment shall be construed to be for the benefit of all creditors in proportion to their respective claims. R. S. 1889, sec. 424; *Crow v. Beardsley* (1878), 68 Mo. 435.

But for such provisions, assignments with preferences to particular creditors would be lawful and valid, as they were in former years. *Bell v. Thompson* (1831), 3 Mo. 84.

If a corporation makes an assignment for the benefit of creditors, such a transfer comes within reach of the section last cited, and no preference could lawfully be given by that assignment. But mere insolvency, we think, can not justly be held to produce the full consequences of a voluntary assignment, without some act by the corporation or its managers.

If such were its effect, for the reason advanced by plaintiffs in this case, namely,—that insolvency impresses at once a trust, for all creditors alike, upon the corporate property, depriving the directors of power to dispose of it by sale or pledge,—then how could the directors be said to have power, as this court has expressly held they have, to transfer that property to an assignee for any purpose? *Hutchinson v. Green* (1880), 91 Mo. 367. Their right to make a voluntary assignment for the benefit of creditors, when the concern has reach a state of insolvency, depends on the same right of control over the corporate property, which will sustain a transfer by way of preference to one creditor, so long as that control has not been limited by legal or equitable proceedings against the corporation or the property.

To give mere insolvency the effect claimed by plaintiffs, would require the aid of positive law on the subject, which, in Missouri, is, at this time, wanting.

Positive law is necessary to define, at least, the time at which the right of control of property, incident to its ownership by the corporation, shall cease, or in other words what shall constitute statutory insolvency, should the lawmakers consider desirable the adoption of such a theory as that contended for by plaintiffs.

In the present condition of the law of Missouri, we think the creditor of a corporation has the same right to secure, by superior diligence or persistency, and to retain, a preference for his claim against a private corporation, that he would have were his debtor an individual engaged in the same line of business, provided always that the transaction is honest, that is to say, not a mere cover to a purpose to hinder, delay or defraud other creditors of the failing debtor.

This conclusion we believe to be the necessary deduction from common law principles still in force in this state.

But we are further of opinion that the law to that effect should be held established by prior rulings.

Nearly forty years ago, one of the judges of this court remarked that "the law may be considered as settled that a corporation may convey its property in trust to pay its debts, and, like an individual, may prefer one creditor to another." *St. Louis v. Alexander* (1856), 23 Mo. 524.

That view was approved in *Kitchen v. St. Louis, etc., Co.* (1878), 69 Mo. 254, and in *Foster v. Mullanphy Mill Co.* (1887), 92 Mo. 87.

Very lately the question of the effect of insolvency on the title of a corporation to its property was considered by the second division of the court, and it was

held that insolvency alone did not impress upon the property a trust for creditors generally, so as to exclude the right of one creditor to reach it for his own particular claim. *LaGrange, etc., Co. v. National Bank of Commerce* (1894), 122 Mo. 154.

The United States supreme court in a recent case, originating in Missouri, gave expression to the following views touching the so-called "trust fund" theory, viz:

"We do not question the general doctrine invoked by the appellant, that the property of a railroad company is a trust fund for the payments of its debts, but do not perceive any place for its application here. That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it can not be sold, transferred or mortgaged to *bona fide* purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence." *Fogg v. Blair* (1890), 133 U. S. 534.

In a later decision by that court, the relation of a failing corporation to its general creditors was considered, with reference to the principles of general jurisprudence, and the following rule was announced, viz:

"A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into his possession property burdened with a trust or lien. The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud or sometimes even mere mismanagement in respect thereto; but as between itself and its creditors, the corporation is simply a debtor, and does not hold its

property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor. That is certainly the general rule, and if there be any exceptions thereto they are not presented by any of the facts in this case. Neither the insolvency of the corporation, nor the execution of an illegal trust deed, nor the failure to collect in full all stock subscriptions, nor all together, gave to these simple contract creditors any lien upon the property of the corporation, nor charged any direct trust thereon." *Hollins v. Coal & Iron Co.* (1893), 150 U. S. 385.

We deem it unnecessary to attempt a review of the cases in other states which the industry and intelligent research of counsel have brought to our notice. Many of those decisions are influenced by various local statutes touching insolvency, assignments, fraudulent conveyances, etc., to such a degree as to make them unsafe guides elsewhere, without a close familiarity with those statutes. 11 Am. and Eng. Encyclopedia of Law, 214, note 1. The statutes are not always quoted in the opinions, though the latter may, nevertheless, reflect the state policy embodied in the written law.

By way of illustration merely, we mention that plaintiffs, among other decisions elsewhere, have called to our attention a case in Ohio and another in Texas, as tending to show that a preference, such as is in view now, can not be given by a corporation. *Rouse v. Bank* (1889), 46 Ohio St. 493; *Lyons-Thomas, etc., Co. v. Perry Stove Mfg. Co.* (1893), 86 Tex. 143.

But we find that by statute in Ohio, and, similarly, in Texas, any transfer of property as a preference, by a debtor, who is insolvent "or in contemplation of insolvency," shall not be valid as against an assignment then in contemplation for the benefit of creditors. R. S. Ohio, 1880, sec. 6343; Sayles' Tex. Civ. St., arts. 65*a* and 65*i*.

We have, in Missouri, no such law touching the insolvency of individual or corporate business enterprises, excepting limited partnerships.   R. S. 1889, sec. 7204.

The existence of the section last cited, if it casts any light on this controversy, rather tends to the inference that the rule it states is an innovation on the principles of the common law.   At least, we do not regard it as declaratory of the latter for reasons which have been already sufficiently disclosed.

2.   The fact that the failing debtor company, after giving the preference in question, made a voluntary assignment for the benefit of its general creditors, on the same day, does not   defeat that preference.   *Union Bank v. Kansas City Bank* (1890), 136 U. S. 223.

The amount of the property transferred did not, of itself, taint the transaction with fraud, as was expressly held in the recent cases of *Hargadine v. Henderson* (1888), 97 Mo. 375, and *Jaffray v. Mathews* (1894), 120 Mo. 317, which received very thorough consideration.

Furthermore, it appears from the evidence that none of the officers or agents of the bank was even aware of any intent of the tailoring company to execute the assignment afterwards.

The fact of knowledge of such intent would have, however, no bearing on the right to make the preference.   It might be relevant on the issue of good faith in giving it; but we need not go into that phase of the case, since it has been conceded by counsel that the question of fraud in making or taking the preference does not enter into the dispute.

We conclude that, under the existing law of Missouri, the preference in favor of the bank was valid, and hence the judgment of the trial court should be reversed and the cause remanded for such further proceedings as may be in conformity to this opinion.

Black, C. J., and Brace and Macfarlane, JJ., concur.