BUTLER, *Plaintiff-Appellant*, v. HARRISON LAND AND MINING COMPANY, *Defendant-Appellant*.

139 467
d149 208

Division One, June 8, 1897.

1. Corporation, Transfer of Property to Directors. The transfer by an insolvent corporation of its property to its directors, who are *bona fide* creditors because of money previously advanced by them to the company, is valid as against general creditors.

2. ———: ———: PUBLIC TRUST. The law does not limit the power of corporations to transfer its property by fair dealing in the interest of its stockholders so long as the corporation undissolved holds the title thereto and the possession thereof. Nor is it true that as soon as a condition of insolvency is approached, its property is impressed with a trust for the general good.

3. ———: ———. A corporation can transfer its property to its directors to pay money advanced to it by them in the same way that it can use that property to pay the president or other officer for services performed by him in managing the business.

4. ———: ———: TRUST FUND. The trial court committed error in holding that land honestly transferred by a corporation to its directors in liquidation of subsisting debts was impressed with a lien or trust in behalf of a third party who had obtained a judgment against the company after such transfer.

5. ——— :    ——— : REMEDY: CREDITOR'S BILL. The directors of a corporation, when *bona fide* creditors, stand on a footing equally as good as its general creditors; and if such corporation has in good faith transferred its entire property to such directors in payment if an honest debt, a general creditor whose claim was not a lien at the time of the transfer, has no remedy, unless it be under section 2519, Revised Statutes, 1889. But if such transferees take such property impressed with a trust for the benefit of all its creditors, and the evidence so shows, the remedy of a general creditor is not by a suit and judgment and a levy upon, sale and the purchase by him of the property transferred to the directors, and a further suit asking that the deed to them be set aside and his sheriff's deed be declared a prior lien, but by a creditor's bill in equity under which all the assets of the corporation, including the property transferred to the directors, can be ascertained, marshaled together and resold, and the proceeds distributed ratably among all the creditors, including the directors.

*Appeal from Crawford Circuit Court.*

REVERSED AND REMANDED (*with directions*).

*L. B. Woodside* for plaintiff-appellant.

(1)    This court approved a judgment like the one in this case in the case of *Missouri Lead Mining and Smelting Company v. Reinhard*, 114 Mo. 218. In that case the circuit court declared a lien against the property of the debtor corporation, then in the hands of a new corporation, and this court, speaking through Judge BLACK, approved the action. (2)    Under the facts in this case plaintiff is entitled to recover all the lands embraced in his deed, and to have the transfers, made by the directors of the Nova Scotia Iron Company to themselves, set aside. There was clearly fraud in the action of the directors of the Nova Scotia Iron Company in absorbing all the property and leaving debts unpaid. Where a vendor makes a deed with intent to defeat creditors, it is void. There can hardly be a question under the evidence in this case, but that the prompting cause for the making of the conveyances at the time they were made was to shut out Butler's claim. If the grantee in the fraudulent conveyance is a participator in the

fraud, he can reap no benefit therefrom, although he pays full value for the property. *Potter v. Stevens*, 40 Mo. 229; *Henderson v. Henderson*, 55 Mo. 534; *Shelley v. Boothe*, 73 Mo. 74; *Stone v. Spencer*, 77 Mo. 356. The fact that these parties left their matters unsettled for nearly four years after the closing of business and then hurriedly met together upon receiving notice that another party was making a claim against the corporation, and disposed of all its property, is abundant evidence of the fraudulent intent in making such disposition, and the fact that they denied the validity of Butler's claim is still stronger evidence that the intention of the act was to defeat him, and if anything further was necessary it is fully shown when neither of the parties appeared at the trial to testify, although subpoenaed. (3) There had been no meeting of the board of directors for more than a year, and it seems to have met together without any regular call, and its acts were absolutely void. *Hill v. Rich Hill Coal Mining Company*, 119 Mo. 21. (4) The fact that a majority of the board of directors were interested in the transaction, in conveying this real estate to themselves, would make the transaction void, even had the meeting been held at a time provided for by law. *Hill v. Rich Hill Coal Mining Company, supra*. (5) Even if there was no fraud in the transaction, and the meeting had been regularly held, yet they could not, as directors of the corporation, absorb all of the property and leave plaintiff's debt unprovided for. The assets of an insolvent corporation are trust funds for the benefit of all its creditors, in so far as to prohibit the disposition of its assets toward the payment of debts due its officers. *La Grange Butter Tub Co. v. Bank*, 122 Mo. 160. (6) Under the facts in this case the judgment is as favorable to defendants as any court would be authorized to give, and it should not be reversed in their favor, and

if any change is made in it it should be reversed and directions given to the court below to enter up judgment setting aside the deed made by the Nova Scotia Iron Company, and giving judgment for plaintiff for the possession of the land.

*A. U. Farrow* and *T. A. Post* for defendant-appellant.

(1)   The board of directors of the Nova Scotia Iron Company had the right to prefer Lackland, Harrison and Howard to other creditors of the company, unless the tranfers were made with the intent to hinder or delay or defraud creditors.   *Schufeldt v. Smith*, 131 Mo. 289; *Kitchen v. Railroad*, 69 Mo. 224; Bump, Fraud. Conv. [4 Ed.], p. 192.   (2)   The board of directors of the Nova Scotia Iron Company were not guilty of an intent to hinder or delay or defraud the creditors of the company in such transfers.   A debtor has the unquestioned right to pay an honest debt to one creditor, though it absorbs all his property and leaves his remaining creditors unpaid.   Bump, Fraud. Conv. [4 Ed.], secs. 168 and 170; *Uhler v. Maulfair*, 23 Pa. St. 481.   There was, at the time of the transfers of February, 1888, a *bona fide* indebtedness from the Nova Scotia Iron Company to Lackland, Harrison and Howard of $110,036.26.   The property turned over to defendants was valued in the settlement between them and the company at far more than its real value.   The transfers were without condition or reservation.   It is immaterial whether at the date of the transfers the mining lessors were pressing their claim, or whether pressure of that claim may have precipitated the transfers, inasmuch as those transfers deprived plaintiff of no legal right.   (3)   The issues joined and tried below were the same as those involved in an ordinary suit by attachment and judgment was sought fastening a lien on defendant's property exclusively in favor of plain-

tiff. The court as a jury tried the facts and made its findings touching the question of fraud. Such being the fact, this court will not review the verdict of the court below finding that the transfers by the Nova Scotia Iron Company were "not fraudulent." (4) From the bill of exceptions a doubt could arise as to the *bona fides* of the transfers of the Nova Scotia Iron Company, that doubt should be resolved in defendant's favor by the finding of the court below. *Drosten v. Mueller*, 103 Mo. 624; *Mathias v. O'Neill*, 94 Mo. 529; *McElroy v. Maxwell*, 101 Mo. 294; *Blount v. Skratt*, 113 Mo. 48; *Toler v. McCabe*, 52 Mo. App. 532; *Parker v. Roberts*, 116 Mo. 657–667; *Johnson v. Duer*, 115 Mo. 366. (5) Even if the doctrine touching the right of a coporation to prefer its own creditors were left out of view, plaintiff would have no right to a judgment making his own claim a lien prior and preferred to that of defendant. All that he would be entitled to would be a pro rata distribution, with defendant as joint creditor, of proceeds of sale of the property transferred. *Foster v. Mullanphy Planing Mill Co.*, 92 Mo. 79; 2 Moraw. Corp. [2 Ed.], secs. 789, 796; *State ex rel. Moll v. Brockman*, 39 Mo. App. 131; *Worther v. Griffith*, 28 S. W. Rep. 286.

ROBINSON, J.—By this action plaintiff seeks to have set aside and canceled certain deeds to about twelve thousand acres of land in Dent county, made by the Nova Scotia Iron Company, a corporation, to certain of its directors, and by them afterward conveyed to the defendant, the Harrison Land & Mining Company. Plaintiff, as an after execution creditor of the Nova Scotia Iron Company, sold the land as the property of the Nova Scotia Iron Company, and became the purchaser thereof.

The petition in substance charges that the deed to the Dent county land from the Nova Scotia Iron

Company was made to Messrs. Lackland, Harrison and Howard, directors and stockholders of said corporation for the purpose of hindering, delaying and defrauding the plaintiff in the collection of his debt against said company; that the corporation and all the officers thereof knew of plaintiff's claim; that the corporation made and the directors accepted' the deeds to said land for the purpose of delaying and defeating plaintiff in the collection thereof; that said Lackland, Harrison and Howard, the grantees in the first named deed, were also the sole directors and stockholders of the Harrison Land & Mining Company, the defendant herein; that they caused to be conveyed to said corporation the lands so formerly conveyed to themselves in furtherance of their design to defeat the plaintiff in the collection of his claim, and that said defendant took said lands with full notice of the fraudulent transfer from the Nova Scotia Iron Company to said Lackland, Harrison and Howard, and with full notice of plaintiff's claim. That plaintiff, as a creditor of the Nova Scotia Iron Company, after the conveyance above set out, obtained a judgment against said company, had execution issued, and caused a levy to be made upon said lands as the property of the Nova Scotia Iron Company, and had the same sold, and at said sale became the purchaser thereof. Then follows the prayer that the court set aside and cancel the deeds made by the Nova Scotia Iron Company to said Lackland, Harrison and Howard, and to also set aside and cause the deeds made by Lackland, Harrison and Howard to the Harrison Land & Mining Company and for such other judgment and decree as may to the court seem just and proper in the premises. Then followed a second count in ejectment for the possession of the lands.

The defendants filed a general denial to the allegations of plaintiff's petition, with the further allegation on their part that "any and all conveyances made by the Nova Scotia Iron Company to Buford J. Lackland, John W. Harrison and Thomas Howard or either of them and any conveyances made by said Lackland, Harrison and Howard or either of them, to the Harrison Land & Mining Company, were not fraudulent in fact or law, but were made in settlement of the *bona fide* indebtedness; that the land thereby conveyed was worth far less than the amount of indebtedness in settlement of which said lands were conveyed."

Upon the testimony under the issues as thus made up the court found: "That Lackland, Harrison and Howard being directors of the Nova Scotia Iron Company, took all of the assets of said corporation in payment of their own claims, with full knowledge of plaintiff's claim and that the same in equity should be charged with the payment of plaintiff's judgment, and that the said Harrison Land and Mining Company, through its said stockholders and directors, B. J. Lackland, Thomas Howard and John W. Harrison, took the deed to said real estate with full knowledge of plaintiff's claim, and that the said real estate, in the hands of the said Harrison Land & Mining Company, should in equity be charged with the payment of plaintiff's judgment; that the said transfer from Nova Scotia Iron Company to said Harrison, Lackland and Howard, was not fraudulent, but yet was against the rights of said plaintiff to the extent that he is entitled to have said land in the hands of defendant charged with the payment of said judgment."

It was therefore decreed that plaintiff's sheriff's deed be set aside and canceled, that plaintiff recover of defendants the sum of $2,164.45, and judgment therefor was declared a lien and charge upon the lands

described; and that the real estate described be sold to satisfy this judgment.

Without going into the testimony in detail, it will be sufficient to say that the Nova Scotia Iron Company was organized as a corporation under the laws of this State for the purpose of smelting and manufacturing pig iron; that Lackland, Harrison and Howard were the directors and sole stockholders of the company; that the company began operations in Dent county by erecting smelters and furnaces, building a branch railroad, and buying up a large tract of mineral land, and doing all other acts and things necessary to carry on and keep in operation a large plant for the manufacture of pig iron.

That the furnace went into blast in 1881, and continued in operation until 1885, when by reason of the failure to produce further ore from its mines and for various causes, the company ceased operations, at the time owing to its directors Lackland, Harrison and Howard $100,000 or more. The indebtedness of the company with the exception of that of plaintiffs and a few small current bills, was all owing to these directors for money advanced by them from time to time to keep the enterprise going. There was also testimony tending to show that the company did not know of plaintiff's claim until just a short time before suit was begun on it in 1889, four years after the company had ceased active business.

After the furnace had remained idle for about four years and the directors found that it was impracticable to carry on the enterprise longer in Dent county, it was determined to close up business in that county and to abandon the Nova Scotia works and to start a new furnace at Paducah, Kentucky. A company was accordingly incorporated at that place by Lackland, Harrison and Howard, as sole stockholders

and directors, and the furnace building and machinery of the Nova Scotia company in Dent county was by resolution of the board of directors adopted in February, 1889, sold to the Paducah company, and the Nova Scotia company was credited with $60,000 on its indebtedness to Lackland, Harrison and Howard, in the proportion of $30,000, $21,000 and $9,000. To further satisfy its indebtedness the company, pursuant to said resolution, made two deeds conveying to the same creditors and in the same undivided interests at a valuation of $2 per acre, its lands in Dent and Reynolds counties, and Lackland, Harrison and Howard in turn conveyed the lands to the Harrison Land & Mining Company, a corporation organized by Lackland, Harrison and Howard, for the purpose of holding the property as a matter of convenience, in consequence of the fact that Harrison had minor children and in order to facilitate sales in cases of his death.

The Riverside railway and engine and other property of the Nova Scotia Iron Company were also sold to Lackland, Harrison and Howard in the same proportionate interests pursuant to the same resolution. The testimony further shows that all of the property sold and transferred by the Nova Scotia company to the Paducah company, the Harrison Land & Mining Company, and to Lackland, Harrison and Howard, was disposed of at a fair and reasonable price and that it did not equal in value the amount of the Nova Scotia company's indebtedness to Lackland, Harrison and Howard; that the company had no other property or assets than was disposed of as above; that the officers of the company had been notified of plaintiff's claim before the board of directors passed the resolution authorizing the transfer and disposition of all its property, and that within a day or so following the passage of the resolution of the board of directors, this plain-

tiff began suit against the company and obtained a judgment for $2,245.40 at the October term, 1890, of the Dent county circuit court and afterward on execution issued thereon, had the lands of the Harrison Land & Mining Company levied upon and sold as the lands of the Nova Scotia company, and he became the purchaser thereof.

Plaintiff's petition in its substantial averments is but a proceeding to invalidate defendant's deeds to the lands in controversy on the ground of fraud in fact, with a second count in ejectment for the possession of same, and is in no sense a creditor's bill asking that the so-called fraudulent conveyance of the land be set aside and same be resold under an order of the court, and the proceeds divided *pro rata* among all the creditors, after an accounting has taken place. It is not our purpose, however, in this opinion, to discuss the form of the proceeding, or to criticise the impropriety of the particular decree entered, but will confine our discussion to the vital question that presents itself for determination regardless of the form of the action, or the want of authority for the decree as rendered. That is, can an insolvent corporation prefer its director creditors, in the disposition of its property, to the exclusion of its general nondirector creditors, so long as the property of the corporation remains in its custody and possession, and the preference is made in good faith, to pay off and discharge honest obligations? Or as that proposition bears upon the facts of this case, ought the title of the defendants to the land in question prevail against that of the plaintiff?

As will be seen from a reading of the judgment and decree of the trial court, all the issues of fact were found against the allegations of plaintiff's petition and in favor of the contention of the defendants. Yet the court adjudged the conveyance made by the corpora-

tion to the land in controversy in favor of the right of plaintiff, to the extent that he is entitled to have same in the hands of defendant charged with the lien of his judgment claim against the Nova Scotia Iron Company. Plaintiff's contention now is, as was manifestly the view of the trial judge, that even though there was no fraud shown in the transaction, which resulted in the conveyance of the land in suit by the corporation to its directors, Lackland, Harrison and Howard, yet they could not as directors of the corporation absorb all the property in payment of their debts and leave plaintiff's debt wholly unprovided for; that the assets of the insolvent corporation were trust funds for the benefit of all its creditors, in so far as to prohibit the disposition of it toward the payment of the debts due its directors to the exclusion of others.

While there is to be found asserted in several opinions of this court the general expression "the assets of an insolvent corporation is a trust fund in the hands of its directors for the benefit of all its creditors," and while there is to be found asserted in the earlier cases in some of our sister States, the broad doctrine that when a corporation becomes insolvent its property and assets at once become converted into a trust fund of which its directors are trustees for all the creditors of the corporation, and that the directors have no power to prefer their claims, or those of any particular creditor or creditors, as against all creditors in general, but must proceed as though they were receivers or assignees, to sell out, wind up, and distribute the proceeds therefrom among all creditors ratably, no such doctrines have ever obtained in this State in that fullness, or if ever recognized have had no sanction since the ruling in the case of *Foster v. Planing Mill Co.*, 92 Mo. 87, wherein SHERWOOD, J., speaking for the court, used this clear and positive

language: "A corporation, within the scope of the purposes for which it was incorporated, may do any act in furtherance of those purposes which an individual in similar circumstances might do, and though insolvent, may prefer some creditor to others, even though such creditors are among the directors of the corporation," and again in the case of *Alberger v. Bank*, 123 Mo. 313, the court says: "There is nothing in the law of this State which can properly be construed to constitute the directors trustees for all general creditors alike, or to limit their power of dealing in good faith with the property by way of preference to one creditor, so long as the company, undissolved, holds the title to the property."

And in the still more recent case of *Schufeldt v. Smith et al.*, 131 Mo. 280, where the directors of the insolvent corporation by a resolution of the board executed a deed of trust to one Smith as trustee, securing the corporation creditors in the order of preference declared in the deed, and early in the order was one of its members, it was sought to have set aside the deed of trust as absolutely void on the ground that the directors had no power to bind the corporation to the agreement made with themselves, this court after a denial of the correctness of the proposition asserted by plaintiff in that, as in this case, used this language: "But it can not be said as a correct proposition of law that officers of a corporation can not themselves and in their own names, contract with it. To so hold would virtually deny to corporations the credit upon which so much of the business of the country is transacted, and which is so essential to success. If the stockholders and officers of corporations are not permitted to advance money to them, or to indorse for them, without subjecting themselves to such disadvantages, they would be deprived of this most valuable

source of credit. A corporation naturally looks to those interested in its affairs for accommodations. If directors can lend the corporation money, or indorse for it, they should certainly have the same right to collect the debts or secure themselves, as is accorded to other creditors. . . . . . . . If the debt is an honest one, and the corporation had the power to contract it, it has the right to pay or secure it, and no fraud can be imputed to it from the fact that it is paid or secured in preference to another.''

In all of the reported cases in this State where the proposition is announced in the course of the opinion that ''the assets of the insolvent corporation are to be treated as a trust fund for the benefit of all the creditors'' the insolvency of the corporation has been confessed, or a court of equity has been appealed to by the corporation or some of its creditors to take charge of, protect, dispose of or distribute the assets according to equitable principles, or the right of disposition of the property by the corporation had been stayed, either by its voluntary action, or by legal process directed against the corporation or its officers; but never to a going concern, empowered by its very creation with the right to transact business and to acquiring and alienating property.

It is no answer to the assertion of disposition of corporate property by its directors at all times and to whomsoever they desire, so long as it remains under the directors' management and control, to say that the corporation was created for public objects, or in consideration of public benefits, and was clothed by its charter or governing statute with the performance of public duties, and therefore its property is impressed with the qualities of a public trust; that its directors and managers can not deal with it other than as with a trust for the public or general good, as soon as a

condition of insolvency is approached.   While corporations are creations of the law, and have certain duties and obligations to perform to the public under the law, their inspiration and aim is also the advancement of private individual interests, and when its public duties and obligations have been performed, it may do any and all acts in furtherance of the purpose of its incorporation within the scope of that purpose, which the individual corporator or corporators might do under like circumstances.   The fact that a corporation is a public creation, a thing of the law, does not change, unless restricted by legislative enactment, or limited by its charter power, the character of its holding and ownership of property, with the necessary right of free disposition thereof involved in the prosecution of the object of that creation.   And as said above, there is nothing in the laws of this State limiting the power of corporations dealing in good faith with their property so long as the corporation, undissolved, holds the title thereto and the possession thereof.   *Alberger v. Bank*, 123 Mo. 313.

If the assets of an insolvent corporation are to be held and treated by the courts as a trust fund for the benefit of all creditors alike at a time before a court has taken charge thereof, and the court is permitted to reach back of the time when its authority over the corporation and its property was first openly asserted, to ascertain when in fact a state of insolvency did exist, and from that time on impress a trust burden on all after disposed of property, all dealings with corporations would be involved in such uncertainty and possible embarrassment as to render them unfit to prosecute the business affairs of every day life, in which they now play so conspicuous a part.   No bankruptcy, insolvency or assignment act, to the knowledge of the writer, has ever gone to that extreme limit in reach-

ing back to affect the disposition of property by its lawful custodian and owner, after the corporation and its assets had been placed in the hands of the law under the form prescribed by those acts; and as we all know, the propriety and wisdom of bankruptcy or insolvency statutes in any form have ever been questioned by many of the best judicial and business minds of the country whenever and wherever enacted.

The only sense in which it can be said that the assets of an insolvent corporation are trust funds when in the hands of its managing board of directors, is that the assets must be used to the discharge of the corporation obligations, before any portion of it can be absorbed by the directors in the payment of stock or certificate obligations of the stockholders, whether they be director or non-director stockholders.

Then if the assets of an insolvent corporation in the hands of its board of directors is not a trust fund to be used for the benefit of all its creditors ratably, can not they dispose of the property to themselves as creditors, to the exclusion of others if desired, bound only by the limit of good faith? That a corporation can contract with its directors for an indebtedness can not be questioned. In fact the corporation can not act without the incurring of an obligation in favor of its managing board, and the incurring of a necessary obligation implies by a like necessity the duty to discharge it, and that duty with the power of disposition, which is an incident to ownership and control of property, means the right of election and preference in the matter of disposing of corporation assets when inadequate to satisfy in full all demands against it. The trust fund doctrine as applied to the assets of an insolvent corporation managing its own affairs can extend no further than to restrain the disposition thereof to

good faith creditors of the corporation, whether director or non-director creditors.

If it be conceded for the sake of plaintiff's contention now made since the case has reached this court, that the assets of the Nova Scotia Iron Company, in consequence of its insolvency at the time of making the deed to the lands in controversy to defendant's grantor, became and was a trust fund, would it not be a joint trust for the benefit of all its creditors among whom according to the facts of the case, and the finding of the trial court, were defendant's grantors?

Such being the case, Lackland, Harrison and Howard, and the defendants as their grantee, certainly stand on a footing at least as good as that of the plaintiff, who was but a general creditor of the company; and plaintiff's remedy should have been by a creditor's bill in equity under which all the assets and property of the Nova Scotia Iron Company could have been ascertained, marshaled together and resold, and the proceeds ordered distributed ratably among all the creditors, including the respondent as well as plaintiff. Instead of such a proceeding he has sought through the one instituted here, which is in effect a law action, to appropriate the property of this defendant, conveyed to its grantors by the Nova Scotia Iron Company for full value, and in partial discharge of an honest obligation owing by the company to defendant grantors, for his own exclusive benefit. If the assets of the corporation are a trust fund, then the only forum for its disposition is in a court of equity, where all rights to the fund can be ascertained and determined, and where the clash and confusion incident to the assertion of individual liens and obligations regardless of the right of others may be avoided.

Under the facts of this case as disclosed by the evidence the plaintiff finds himself now in the awkward

attitude of asking the court to assist him to the benefit of an enforced preference to the property of the Nova Scotia Iron Company and at the same time to deny the right of preference previously exercised by the company voluntarily in favor of defendant's grantors (creditors of the company) of like standing with himself, a position certainly not tenable in a court of law or equity. Any right of preference that a court will enforce in favor of the vigilant in its forum, will be recognized by the court when exercised voluntarily in favor of the vigilant in the forum of business.

The property of the Nova Scotia Iron Company at the time its directors made the deeds to the lands in controversy to themselves was not trust property in the sense that the directors, having its management and control in land, could not dispose of it to whomsoever they might choose in settlement or payment of honest obligations against the corporation for its reasonable value, without leaving it impressed with the burden of plaintiff's or any or all other demands against the company. If the land in suit was not trust property at the time it was deeded, and the corporation had the right of free disposition, which involves the idea of preference, that preference could be made in favor of its directors, when, as in this case, it was shown to have been done in settlement and discharge of honest claims. From the finding of facts by the trial court, and as the record shows them to exist, it is evident that the decree entered herein was predicated upon the theory that all the land in suit in the hands of the directors was trust property, burdened with all the debts of the corporation.

It follows from what has been said that the judgment of the trial court should be reversed and the cause remanded, with directions that the circuit court make an order dismissing plaintiff's bill, and it is so ordered.

BARCLAY, P. J., MACFARLANE, J., concur in the result; BRACE, J., concurs.